UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOHN RIDGEWAY,

        Plaintiff,

v.

        Case Number: 10-11060-BC
        Honorable Thomas L. Ludington

MT. PLEASANT POLICE DEPARTMENT,
LARRY J. BURDICK, ROY R. KRANZ,
TIM HUNT, THOMAS FORSBERG,
AMANDA SWANSON, CITY OF MT.
PLEASANT, and COUNTY OF ISABELLA,

        Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, DISMISSING PLAINTIFF'S CONSTITUTIONAL CLAIMS WITH PREJUDICE, DISMISSING ANY STATE CLAIMS WITHOUT PREJUDICE, AND CANCELING HEARING**

      In December 2005, Plaintiff John Ridgeway was arrested and prosecuted for what authorities alleged were three handshake assaults. The prosecutors assumed that Plaintiff placed some sort of toxic substance on his own hand, and then shook the hands of three public officials, causing them to feel ill. While Plaintiff's behavior may have been peculiar, there was little evidence corroborating Plaintiff's intent to harm the public officials. There was no evidence that the substance Plaintiff put on his hand was toxic. There was no medical confirmation of the complainants' symptoms, which were minor and disappeared within a day or two. When the prosecutors persisted and brought the case to trial, knowing that the substance was vegetable oil, Plaintiff was quickly acquitted by a jury.

      Plaintiff has a reasonable complaint that state officials overreacted in their attempt to prosecute him for three felony charges. He does not, however, have a reasonable claim that they violated his constitutional rights. To the contrary, the criminal justice system appears to have

worked like one would hope. Accordingly, Defendants' motions for summary judgment will be granted, Plaintiff's constitutional claims will be dismissed with prejudice, and any state tort claims will be dismissed for lack of jurisdiction.

## I.

Plaintiff was cited for operating a motor vehicle without insurance in violation of Michigan law on October 5, 2004. He pleaded not guilty and proceeded to trial in Isabella County District Court the following year. Plaintiff, although not a member, knew several people affiliated with the Michigan Militia and was acquainted with its teachings. Among those teachings is the Militia's view that the Constitution provides absolute protection for a wide variety of individual rights. Accordingly, in defense of the motor vehicle citation, he argued that Michigan's insurance requirement violates his constitutional right to travel.

After the Court entered a guilty verdict, but before sentencing, Plaintiff removed a small vial of clear liquid from a canvas bag, poured a small amount onto his right forefinger, rubbed the liquid between his finger and thumb, and anointed the defense counsel table and the podium. Plaintiff purchased the anointing oil from Pastor Pete Peters, who recommends it be used to anoint government buildings and cast out the evil associated with them. It is apparently olive oil or some other type of vegetable oil that has been blessed by the pastor.

Plaintiff was sentenced by the district judge shortly after the anointing. Plaintiff then shook hands with Amanda Swanson, the assistant prosecutor assigned to the case, Jerry Smith, the tribal police officer who had initially cited him, and Hector Latorre, a bailiff. Plaintiff assured them "no hard feelings" as he shook their hands. Neither Latorre nor Smith saw Plaintiff anoint the table and podium and shook hands freely. Swanson observed Plaintiff rubbing oil between his thumb and

forefinger and was reluctant to shake hands. She did so only after Plaintiff prodded her to give him a "real" handshake. Although there is no evidence that Plaintiff intended the handshakes to cause harm, he admitted in his deposition that they were an attempt to "anoint" the court officers with Pastor Peters's oil. Pl.'s Dep. at 36–37; [Dkt. # 15-1].

Shortly after the handshakes, Swanson, Smith, and Latorre began feeling ill. All three experienced similar symptoms, including nausea, dizziness, headache, and a tingling or burning sensation in their hands. Smith and Swanson sought medical treatment while Mt. Pleasant Police officers Tim Hunt and Thomas Forsberg began investigating. Doctors were unable to find anything wrong with Smith and Swanson, and preliminary tests did not reveal any toxic substances in their systems. The day after the handshakes, December 21, 2005, Hunt sought a warrant to search Plaintiff's home and vehicle for the vial so that investigators could determine its contents. In the affidavit, Hunt related that Plaintiff poured a clear liquid onto his hand shortly before shaking hands with Swanson, Smith, and Latorre. He further affirmed that all three began experiencing similar symptoms shortly after the handshake. He noted that a doctor who examined Smith and Swanson believed the substance could have been some sort of nitrate, and that the doctor did not know of a legitimate reason for a private individual to possess such a substance. Hunt's affidavit did not relate that the doctor could not find anything wrong with Smith or Swanson, or that preliminary tests showed there were no toxic substances in their systems. [Dkt. # 15-3]. The affidavit was approved by another assistant prosecutor, Roy Kranz, at the behest of County Attorney Larry Burdick. The search warrant was authorized by a state judge.

Investigators from the Mt. Pleasant Police Department, the Michigan State Police,[1] and the Army National Guard's Weapons of Mass Destruction Civil Support Team executed the warrant later that evening. While in route to execute the warrant, one of the police officers spoke with Kranz, who advised him that there was probable cause to arrest Plaintiff for assaulting a police officer or public official. Plaintiff was arrested as he returned to his home that evening with his two children. The vial was found in his car. Plaintiff was charged with one count of assaulting a police officer, Mich. Comp. Laws § 750.81d, and two counts of assaulting a prosecutor or officer of the court, Mich. Comp. Laws § 750.479. All three charges are felonies punishable by up to two years in prison. Plaintiff was detained on a $900,000 bond, while the vial was sent to an FBI laboratory in Virginia for analysis.

At a preliminary hearing on January 10, 2006, Swanson, Smith, and Latorre testified about their handshakes, and the symptoms they experienced following the handshakes. No witness testified about the contents of the vial, or what the officers encountered when they executed the search warrant and arrested Plaintiff. Even though the National Guard's Weapons of Mass Destruction Team had tested the substance in the vial, and determined that the substance was not toxic, that information was apparently not revealed at the hearing. Supplemental Police Report at 7, 11; [Dkt. # 15-3]. Rather, the prosecutor and Plaintiff's defense attorney agreed that they would not know for certain what was in the vial until the full battery of tests were completed in Virginia.

Although he expressed some hesitancy because he did not know what was in the vial and there was no evidence of toxic substances in the victims' bodies, the Honorable Craig D. Alston

---

[1] The Michigan State Police officers present included members of the elite "emergency services" and "meth lab" teams, which are trained to handle particularly dangerous situations.

concluded that there was probable cause for the three assault counts.

> I guess at this point, not knowing whether the blood and urine tests would be dis-positive [sic] for the presence of this nitrate-type substance, and again it not being determinative as to whether there is nitrate in the vial that was seized, es – especially given that we're not sure or wouldn't be sure exactly where this vial was seized to – to indicate whether it was the, you know, same one that was in the court – courtroom or not.
>
> Given tho – given that, I guess that I will make a finding that there was some sort of substance that was on his hand that was transmitted that caused these physical effects that were quite similar in nature among all three people that had shook his hand. That is without even regard to the result of the tests, I do agree, significant circumstantial evidence to establish probable cause to believe that he, by this handshake, applied that unknown substance causing these injurious effects.
>
> And so he'll be bound over to the Circuit Court for trial on all three of these charges.

Preliminary Hearing Tr. at 80–81; [Dkt. # 15-6]. Judge Alston also declined to reduce Plaintiff's $900,000 bond. He noted, however, that if the tests of the vial come back negative, he would recommend that the circuit judge reconsider the bond. *Id.* at 81–84.

After Plaintiff spent fifty-four days in the county jail, test results on the substance in the vial were returned from Virginia. The tests revealed that the substance in the vial was olive oil or some other type of vegetable oil, and it contained no known toxins. Plaintiff was released from jail on a personal recognizance bond. On July 20, 2006, a jury trial as to the three assault charges began. At the close of the prosecution's proofs, Plaintiff's defense attorney moved for a directed verdict. Plaintiff's defense attorney argued that Plaintiff could not be guilty of assault or battery because the complainants consented to the handshakes. He further argued that the handshakes could not be crimes because there was insufficient proof that the handshakes caused harm.

The Honorable Jeffrey Martlew, who was presiding over the trial on assignment from Clinton County, denied the motion, concluding that the evidence, when viewed in the light most favorable

to the prosecution, could demonstrate that Plaintiff had committed three acts of simple assault against a public official.[2] Judge Martlew emphasized the elements of the charged offenses: 1) that Plaintiff attempted to commit a battery or did an illegal act that caused the complainant to reasonably fear an immediate battery; and 2) that the complainant was a police officer, prosecutor, or officer of the Court. Trial Tr. at 161; [Dkt. # 15-7]. A battery is a forceful, violent, or offensive touching. *Id.* Judge Martlew reasoned that by placing an unknown substance on his hand, and then shaking hands with the complainants, a reasonable jury could conclude that Plaintiff attempted to commit and "offensive touching" or committed an illegal act that caused reasonable apprehension of the touching in the complainants. *Id.* at 161–63.

The trial continued the next day, and after Plaintiff entered his proofs, the jury returned a verdict of not guilty on all three counts.

## II.

On March 16, 2010, Plaintiff filed a five-count complaint against Defendants Isabella County; the City of Mt. Pleasant; the Mt. Pleasant Police Department; Larry Burdick, the Isabella County Attorney; Roy Kranz, a former Isabella County Assistant Prosecutor; Tim Hunt and Thomas Forsberg, Mt. Pleasant Police Officers; and Amanda Swanson, one the complaining witnesses. In Count I, Plaintiff asserts that his arrest and imprisonment violated the Fourth Amendment; in Count II, Plaintiff alleges a "federal constitutional tort for malicious prosecution"; in Count III, Plaintiff alleges a "federal constitutional tort for abuse of legal process"; in Count IV, Plaintiff alleges

---

[2] There is some confusion in the record as to whether the prosecution's theory was based on assault, battery, or both, and whether Plaintiff's attorney moved for a directed verdict on an assault charge, a battery charge, or both. At the close of proofs, however, it appears that the court settled on a single theory, assault.

violations of his First, Second, Fourth, and Fourteenth Amendment rights through 42 U.S.C. § 1983; and in Count V, Plaintiff alleges a claim for violation of 42 U.S.C. § 1985.

As an initial matter, it is not clear from Plaintiff's complaint what he means by "federal constitutional tort for abuse of legal process" or "federal constitutional tort for malicious prosecution." After reviewing Plaintiff's response to Defendant's motion for summary judgment, however, it appears that Plaintiff's primary claims are the Fourth Amendment illegal seizure claim identified in Count I and a due process claim for violation of the duty to disclose exculpatory evidence. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Plaintiff also asserts a *Monell* claim against the City and County and a vague "conspiracy" claim pursuant to § 1983 and § 1985 against all the Defendants. *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658 (1978).

On February 7, 2011, the County Defendants and the City Defendants filed separate motions for summary judgment. Defendants argue that Plaintiff's Fourth Amendment claims should be dismissed because his arrest and detention were supported by probable cause. Moreover, whether there was probable cause for the arrest and detention was litigated and decided by the state courts during the preliminary hearing, and should not be reconsidered here. Similarly, Defendants contend that the malicious prosecution claims should be dismissed because there was no *Brady* violation. Defendants also contend that the *Monell* claims against the City and County should be dismissed because there is no evidence of a custom or policy to violate Plaintiff's rights. Finally, Defendants contend the conspiracy claims should be dismissed because there is no evidence of a conspiracy to violate Plaintiff's constitutional rights. Each claim will be addressed in turn.[3]

---

[3] Defendants also raise numerous defenses that are specific to individuals. For example, Plaintiff's claims are all addressed generally at all Defendants even though most did not participate in a significant way in Plaintiff's arrest or prosecution. Plaintiff's claims will be

### III.

A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of informing the Court of the basis for its motion, and identifying where to look in the record for relevant facts "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must "set out specific facts showing a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). If the opposing party does not raise genuine issues of fact and the record indicates the moving party is entitled to judgment as a matter of law, the court shall grant summary judgment. *Anderson*, 477 U.S. at 250.

The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. The party opposing the motion may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

---

dismissed because he has not demonstrated a constitutional violation, making it unnecessary to address the defenses that are specific to individuals.

**A.**

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures . . . ." U.S. Const. amend IV. Police officers may arrest a person without a warrant, but only if the arresting officer has probable cause to believe the person has violated or is violating the law. *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988); *see also Ingram v. City of Columbus*, 185 F.3d 579, 592–93 (6th Cir. 1999) ("It is a well-settled principle of constitutional jurisprudence that an arrest without probable cause constitutes an unreasonable seizure in violation of the Fourth Amendment."). An officer has probable cause to make an arrest if there are "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979) (citations omitted). Whether probable cause exists to make an arrest depends on the facts then known to the officer, "rather than with the 20/20 vision of hindsight." *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001).

The Supreme Court has emphasized that the question of whether there is probable cause to make an arrest is an objective one, and the officer's subjective intentions or motivations do "not invalidate the [arrest] as long as the circumstances, viewed objectively, justify that action." *Scott v. United States*, 436 U.S. 128, 137–38 (1978); *see also Criss*, 867 F.2d at 262 ("If the circumstances, viewed objectively, support a finding of probable cause, the arresting officer's actual motives are irrelevant."). Once an officer establishes probable cause, he is under no obligation to continue investigating and may immediately arrest the suspect. *Klein*, 275 F.3d at 551. "A suspect's satisfactory explanation of suspicious behavior is certainly a factor which law enforcement officers

are entitled to take into consideration in making the determination . . . [but they are] under no obligation to give any credence to a suspect's story nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation . . . ." *Criss*, 867 F.2d at 263.

Moreover, "where 'the state affords an opportunity for an accused to contest probable cause at a preliminary hearing and the accused does so, a finding of probable cause by the examining magistrate or state judge should foreclose relitigation of that finding in a subsequent § 1983 action." *Smith v. Thornburg*, 136 F.3d 1070, 1077 (6th Cir. 1998) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 175 (6th Cir. 1987)); *see also White v. Tamlyn*, 961 F. Supp. 1047, 1054–55 (E.D. Mich. 1997) (concluding that Plaintiff was collaterally estopped from challenging probable cause in a § 1983 action where a Michigan state judge concluded there was probable cause at the preliminary hearing and the plaintiff's subsequent conviction was affirmed on appeal).

In this case, Plaintiff's Fourth Amendment false arrest claim will be dismissed because he is estopped from relitigating Judge Alston's determination at the preliminary hearing that there was probable cause for Plaintiff's arrest and detention. Three witnesses testified at the preliminary hearing, and Plaintiff had a full and fair opportunity to cross examine each of them. Plaintiff also had an opportunity to call his own witnesses, but declined to do so. Based on the testimony of those witnesses and the argument of the lawyers, Judge Alston determined there was probable cause to believe Plaintiff was guilty of assaulting a police officer and two officers of the court. Without some showing that the probable cause hearing was flawed or one of the witnesses lied, Plaintiff may not relitigate the question in this Court. Indeed, Judge Alston even complimented Plaintiff's attorney and the prosecutor on the quality of their arguments. At the end of the hearing he noted: "And I must say, a very good, professional presentation by both counsel. I'm very pleased. Thank you."

Plaintiff asserts that Judge Alston's decision should be disregarded because state officials withheld exculpatory evidence. *See Hinchman v. Moore*, 312 F.3d 198, 202–03 (6th Cir. 2002) (concluding plaintiff is not estopped from relitigating probable cause if the § 1983 "claim is based on police officer's supplying false information to establish probable cause"); *Sykes v. Anderson*, 625 F.3d 294, 313 (6th Cir. 2010) (concluding police officer may be liable for malicious prosecution despite probable cause determination at preliminary hearing if the officer lied or withheld information in his testimony and report). Plaintiff contends that the police officers and prosecutors were aware that the substance in the vial was tested by the National Guard at the scene of Plaintiff's arrest, and that the tests did not uncover any toxic substances in the vial. Plaintiff further asserts that the officers and prosecutor deliberately withheld that information from Plaintiff.

Pursuant to *Hinchman* and *Sykes*, if the police officers deliberately withheld information concerning the National Guard's test, there may well be a material issue of fact with respect to Plaintiff's false arrest, illegal detention, and malicious prosecution claims. *See Sutkiewicz v. Monroe County Sheriff*, 110 F.3d 352, 358 (6th Cir. 1997) (concluding that an officer in possession of exculpatory evidence is required to disclose that evidence "to the prosecutor"). The record, however, demonstrates otherwise. The results of the National Guard's test were disclosed by the police officers to the prosecutor, who in turn presented them to Plaintiff's defense attorney before the hearing. The information was reported in a supplemental police report that was forwarded to the Isabella County Prosecutor's Office on January 5, 2006, and copied by Plaintiff's defense attorney on the same day. [Dkt. # 26-1, 26-2]; *see also* Supplemental Police Report at 10; [Dkt. # 25-3]. Thus, although the National Guard's test of the vial was not raised at the January 10 preliminary hearing, it was properly disclosed to Plaintiff's attorney before the hearing. *Brady*

-11-

requires disclosure, not skillful use of the disclosed information by the defendant's counsel. 373 U.S. at 87.

Moreover, even if the question of probable cause were properly before this Court, Plaintiff has not demonstrated that the officers and prosecutors lacked probable cause to arrest him and detain him as they did. Swanson observed Plaintiff place some substance on his hand. A few minutes later, he insisted on shaking her hand, over her objection, as well as the hand of a police officer and court officer. All three people who shook his hand experienced similar symptoms, including nausea, dizziness, and a tingling sensation in their hands. That is enough evidence to believe that Plaintiff had committed a battery—an offensive touching—or an assault—an attempted battery. Although later tests revealed that the causal connection between the handshakes and physical symptoms was, at best, speculative, there was probable cause to believe Plaintiff had committed an offensive touching or attempted to commit a battery and there remained probable cause for that belief through trial.

Plaintiff admitted that the handshakes were, in part, an attempt to anoint the officials with Pastor Peters's anointing oil. Thus, even if the handshakes were consensual, the anointing was not. Moreover, as Judge Martlew emphasized when he denied Plaintiff's motion for a directed verdict following the close of the prosecution's proofs at trial, Michigan law does not require physical harm or the intent to inflict physical harm to sustain an assault conviction. Thus, to the extent the handshakes with Swanson, Smith, and Latorre were actually "anointings" and intended to frighten the complainants, it was reasonable to believe that they were unwanted or offensive touching that was intended to cause, and reasonably could cause, apprehension of an immediate battery in the victims. *See People v. Johnson*, 284 N.W.2d 718, 718–19 (Mich. 1979) (criminal assault requires

proof that suspect acted with "intent to injure or an intent to put the victim in reasonable fear or apprehension of an immediate battery"); *People v. Gardner*, 265 N.W.2d 1, 5–7 (Mich. 1978) (same).

Similarly, the handshakes with Smith and Latorre could have sustained a battery charge against Plaintiff because they did not know the oil was on Plaintiff's hand. Thus, the handshake was an unconsented anointing that caused apparent later harm, physical or mental. The handshakes may not have been assaults, with respect to the officers, because there was no "imminent" apprehension—there could not have been because they did not know about the oil. By contrast, with respect to the prosecutor, the handshake may not have been a battery because she knew about the oil and still shook Plaintiff's hand—she consented. It could have been an assault, however, because it was offensive to her and she reasonably experienced imminent apprehension with respect to the composition of the oil. *See* Glenn C. Gillespie & Timothy A. Baughman, *Michigan Criminal Law & Procedure* §§ 5.35–.40 (2d ed. 2001); *see also People v. Bryant*, 264 N.W.2d 13, 16 (Mich. Ct. App. 1978) (comparing assault to battery).

Accordingly, Plaintiff's complaint will be dismissed because he has not demonstrated that there was any violation of his First, Second, Fourth, or Fourteenth Amendment rights.[4] The prosecution's proofs may have been thin, but they were sufficient at the time to demonstrate probable cause to believe Plaintiff had assaulted or battered the three claimants. It may, in hindsight, have been wiser to dismiss the case, and not just release Plaintiff from jail, when

---

[4] Although Plaintiff's complaint could be read to include a Fourth Amendment claim relating to the search of his home, his response to Defendants' motions for summary judgment does not include any argument or explanation of a Fourth Amendment search claim. To the extent he intended to bring a Fourth Amendment illegal search claim, it is now waived.

authorities realized it was olive oil and not some nefarious substance in the vial. *See Gregory v. City of Louisville*, 444 F.3d 725, 750–51 (6th Cir. 2006) (emphasizing that Fourth Amendment rights persist beyond the initial arrest). But, it remained uncertain at the time whether the FBI tested the right vial, and neither the Constitution nor § 1983 provide a remedy for plaintiffs under these circumstances.

Because there was probable cause to believe Plaintiff had committed a crime at the time of his arrest, at the time of his detention, and at the time of his trial, his Fourth Amendment rights were not violated. Because prosecutors disclosed all exculpatory evidence in their possession, his Fourteenth Amendment rights were not violated.[5]

**B.**

A municipality cannot be held liable where there is no underlying constitutional harm inflicted by its officials. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). There is no underlying constitutional harm in this case. Even if it were possible to find a municipality liable under § 1983 without underlying constitutional harm, however, Plaintiff's claims against the City and the County still must be dismissed because Plaintiff has not identified any custom or policy that caused the alleged violations. *Monell*, 436 U.S. at 690–91. Municipalities "cannot be held liable *solely* because [they] employ[] a tortfeasor." *Id.* at 691.

Plaintiff asserts that the City and County should be held liable for failing to train their

---

[5] Plaintiff also alleges First and Second Amendment violations in his complaint, but he does not explain how his rights to free expression and to "bear arms" are implicated in this case. Similarly, Plaintiff asserts that his detention for fifty-four days violates his substantive due process rights, but he does not explain how the detention "shocks the conscience" when it was supported by probable cause. *See Rochin v. California*, 342 U.S. 165, 209–10 (1952). Accordingly, all of Plaintiffs constitutional claims will be dismissed.

-14-

employees, *City of Canton v. Harris*, 489 U.S. 378, 380 (1989), or for the absence of a formal policy outlining what steps police officers and prosecutors should take if they discover exculpatory evidence, *Blackmore v. Kalamazoo County*, 390 F.3d 890, 900 (6th Cir. 2004). He does not, however, provide any evidence that there was a breakdown in training or that the City or County lacked a formal policy outlining what to do with exculpatory evidence. *Harris*, 489 U.S. at 390–91 (concluding plaintiffs must prove the absence of training and a causal connection between the lack of training and the ultimate injury). A single alleged violation of the Constitution does not demonstrate a lack of training or the absence of a required policy.

## C.

A conspiracy claim, like a *Monell* claim, cannot prevail unless there is some underlying constitutional violation. Moreover, 42 U.S.C. § 1985, which Plaintiff identifies as the source of his conspiracy claim in Count V, is broader than a § 1983 in that it can reach private conspiracies. Still, § 1985 applies only where the plaintiff can demonstrate "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). There is no evidence in this case of racial or class-based animus, and therefore no basis for a § 1985 claim.

## IV.

Accordingly, it is **ORDERED** that Defendants' motions for summary judgment [Dkt. # 15, 16] are **GRANTED**.

It is further **ORDERED** that Plaintiff's constitutional claims are **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that to the extent Plaintiff intended to raise claims based on state

law, those claims are **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction. 28 U.S.C. § 1367(c).

It is further **ORDERED** that the hearing scheduled for May 16, 2011 was **CANCELED** based on the Court's determination that it would not be necessary to resolve the motions. E.D. Mich. L.R. 7.1(f).

        s/Thomas L. Ludington
        THOMAS L. LUDINGTON
        United States District Judge

Dated: May 18, 2011

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 18, 2011.

        s/Tracy A. Jacobs
        TRACY A. JACOBS